J. S33036/19

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA   :      IN THE SUPERIOR COURT OF
                                       :           PENNSYLVANIA
                    v.                 :
                                         :
ANDREW ROSS EISENHART,       :          No. 311 MDA 2019
                                         :
              Appellant        :


Appeal from the Judgment of Sentence Entered October 30, 2018,
in the Court of Common Pleas of Berks County
Criminal Division at No. CP-06-CR-0002924-2017


BEFORE:  LAZARUS, J., OTT, J., AND FORD ELLIOTT, P.J.E.


MEMORANDUM BY FORD ELLIOTT, P.J.E.:      **FILED SEPTEMBER 06, 2019**

Andrew Ross Eisenhart[1] appeals from the October 30, 2018 judgment of sentence entered in the Court of Common Pleas of Berks County following his conviction in a bench trial of false identification to law enforcement authorities and driving while operating privileges suspended or revoked.[2] Appellant received a sentence of 9 months' probation for the false identification conviction and was ordered to pay a $200 fine for the suspended license conviction.  After careful review, we affirm in part and reverse in part.

The trial court set forth the following factual and procedural history:

> In March 2017, a Police Officer was on patrol when he
> noticed a car that had darkly tinted windows driving

---

[1] We note that appellant's surname is also identified in the record as "**Eisenhardt**."

[2] 18 Pa.C.S.A. § 4914(a) and 75 Pa.C.S.A. § 1543(a), respectively.

over the white fog line. The Officer ran the vehicle's registration and the result showed that it was suspended. The Officer executed a traffic stop. When asked for his license and registration, [appellant] said that he didn't have it on him and he gave the Officer the name Alec Eisenhardt and a date of birth. The Officer noticed that [appellant] looked nervous, so the Officer informed him that it was a misdemeanor crime to give false reports to law enforcement officers. [Appellant] continued to give the name Alec. The Officer returned to his vehicle and pulled up the photos for Andrew Eisenhardt and Alec Eisenhardt and the Officer was able to identify [appellant] as Andrew. He returned to [appellant's] car and told him what he knew. [Appellant] apologized and stated that he did it because his license was suspended. [Appellant] was taken to a different location to be picked-up.

Trial court opinion, 4/1/19 at 2.

Following a bench trial, on October 30, 2018, [appellant] was convicted of False Identification to Law Enforcement and Driving While Operating Privileges Suspended or Revoked. On the same day, [appellant] was sentenced to serve 9 months of probation.

On November 14, 2018, [appellant] filed a Post-Sentence Motion which was denied on February 4, 2019. On February 19, 2019, [appellant] filed a notice of appeal. On March 1, 2019, [appellant] filed a timely Concise Statement of [Errors] Complained of on Appeal . . . .

*Id.* at 1 (footnotes omitted). The trial court subsequently filed its opinion pursuant to Pa.R.A.P. 1925(a).

Appellant raises the following issue for our review:

Whether the guilty verdict for False Identification to Law Enforcement was in error as the evidence presented at trial was insufficient to prove beyond a reasonable doubt an essential element of the offense;

> specifically, the Officer failed to expressly inform [a]ppellant that he was the subject of an official investigation into a violation of the law prior to [a]ppellant providing a false name to the Officer.

Appellant's brief at 4.

Appellant challenges the sufficiency of the evidence related to his conviction for false identification to law enforcement authorities. (*Id.* at 12.) Our standard and scope of review for a sufficiency of the evidence claim is well settled.

> The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proof or proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all the evidence actually received must be considered. Finally, the trier of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

*Commonwealth v. Pappas*, 845 A.2d 829, 835-836 (Pa.Super. 2004) (citation omitted), *appeal denied*, 862 A.2d 1254 (Pa. 2004).

False identification to law enforcement authorities is defined, in pertinent part, as:

> **§ 4914.  False identification to law enforcement authorities**
>
> **(a)  Offense defined.--**A person commits an offense if he furnishes law enforcement authorities with false information about his identity after being informed by a law enforcement officer who is in uniform or who has identified himself as a law enforcement officer that the person is the subject of an official investigation of a violation of law.

18 Pa.C.S.A. § 4914(a).  Our supreme court has stated that the elements necessary for a conviction of false identification to law enforcement authorities are:  (1) if not in uniform, the law enforcement officer must identify himself as such; (2) the officer must inform the individual that he is the subject of an official investigation of a violation of the law; and (3) the individual must give false information after being so informed.  *In re D.S.*, 39 A.3d 968, 974 (Pa. 2012).

In *Kitchen*, this court held that the accused is not required to infer from the attendant circumstances that he is the subject of an investigation, but rather, the officer must inform the accused that he is the subject of an official investigation prior to the accused's giving false identification. *Commonwealth v. Kitchen*, 181 A.3d 337, 342-343 (Pa.Super. 2018) (*en banc*).  This court stated, "'the official investigation element of 18 Pa.C.S.[A.] § 4914(a) cannot be satisfied solely by an investigation of the

- 4 -

individual's providing false information as to his identity.'" *Id.* at 343 (original brackets omitted), citing **Commonwealth v. Barnes**, 14 A.3d 128, 131 (Pa.Super. 2011).

In **Barnes**, this court was presented with factual circumstances akin to those in the case **sub judice**. **See Barnes**, 14 A.3d at 129-130. In **Barnes**, the officer, while conducting a traffic stop for windshield obstructions, encountered Barnes who was a passenger in the vehicle. **Id.** After Barnes twice gave false identification to the officer, the officer informed Barnes he was under investigation for providing false identification to law enforcement. **Id.** at 129-131. Barnes then gave false identification for a third time. **Id.** at 129. In concluding that the second element of the false identification statute cannot be satisfied by informing the accused he is being investigated for providing false identification to an officer, this court stated:

> the [false identification] statute in question does not make it illegal to provide to a law enforcement authority false information as to one's identity unless and until one is first apprised that he is the subject of an official investigation of a violation of law. If one provides false information as to his identity prior to that point, he has not violated the statute. Thus, any investigation centered solely upon the providing of false information as to one's identity would not be an investigation of a violation of law. It might be an "investigation" in the eyes of the law enforcement officer, perhaps even an "official" investigation in that it is being conducted by a police officer in the course of his duties. However, the investigation would not be an investigation of a violation of law as contemplated by the statute.

*Id.* at 131.

Here, appellant asserts the Commonwealth failed to present sufficient evidence that appellant was informed by the officer that he was the subject of an official investigation of a violation of law prior to appellant's providing the false identification. (Appellant's brief at 11-17.)[3] The record demonstrates that when viewing all of the evidence in the light most favorable to the Commonwealth, as verdict winner, the evidence was so weak and inconclusive that as a matter of law no probability of fact could have been drawn from the combined circumstances by the fact-finder to establish that the officer informed appellant, prior to appellant's giving false identification, that he was being investigated for a violation the law.

A review of the record reveals that the officer, when asked about the circumstances of the traffic stop, testified as follows:

> [Officer] I observed a white Honda Civic SI drive by my location. It had heavily tinted windows. Also, as the vehicle was traveling east on State Route 562, also known as Reading Avenue, it went over the white fog line on the south side of the roadway. I ran the vehicle registration. Linked to that was the operator, or I should say the owner of the vehicle. It was marked suspended. I then conducted a traffic stop on that vehicle.
>
> . . . .
>
> [Officer] As I approached the vehicle, identified myself to the operator as an officer. I requested the

---

[3] We note that appellant does not challenge the other two elements of false identification to law enforcement authorities, stating, "[a]t trial, the Commonwealth presented evidence that established that Officer Breitenstein clearly identified himself as a police officer and that [a]ppellant provided a false name." (Appellant's brief at 12, citing notes of testimony, 10/4/18 at 5.)

operator, the lone operator's information, registration, insurance identification, to which he said he didn't have it on him and provided me a name verbally.

[Commonwealth]  What was that name?

[Officer]  I believe Alec . . . .

. . . .

[Commonwealth]  What did you do next?

[Officer]  I had a feeling that this wasn't the identify [sic] -- wasn't the individual.  So I advised him that I thought the information he provided was incorrect.  I advised him if he did provide me with false information that he would be creating a misdemeanor, which he hesitated and provided me with the same name and said that was him.

. . . .

[Commonwealth]  And what did you do next?

[Officer]  I then returned to my police vehicle.  I pulled up both the registered owner and I pulled up the information that he provided me with, which was his brother.  You were clearly able to tell and articulate to the operator of the vehicle the information was not the information he provided to me.  It was the owner, [appellant] today.

[Commonwealth]  Okay.  Did you re-engage [appellant]?

[Officer]  Yes, I did.

[Commonwealth]  And what happened?

[Officer]  I advised him what I located.  At which time he was hesitant and informed me he was sorry that he did provide the false information to this officer.

Notes of testimony, 10/4/18 at 5-7. The officer did not testify that he informed appellant that he was the subject of an official investigation of a violation of the law for driving over the white fog line, driving a vehicle with darkly tinted windows, driving a vehicle with a suspended registration, or for any other traffic law violation prior to appellant's providing false identification. (*Id.* at 4-9.)

The trial court found the officer's informing appellant that if he provided false identification to the officer he could be charged with a misdemeanor was sufficient to establish beyond a reasonable doubt that appellant had been informed that he was the subject of an official investigation of a violation of the law for purposes of 18 Pa.C.S.A. § 4914(a). (Trial court opinion, 4/1/19 at 3-4.) In so holding, the trial court erred as a matter of law in its interpretation and application of this court's decisions in *Kitchen* and *Barnes* when it concluded that the Commonwealth met its burden of proof as to the second element of the false identification statute with the officer's testimony that he informed appellant that if he gave false identification he could be charged with a misdemeanor. *See Kitchen*, 181 A.3d at 343; *Barnes*, 14 A.2d at 131.

The record demonstrates appellant's sufficiency claim is meritorious because the Commonwealth failed to prove that the officer informed appellant that he was the subject of an official investigation of a violation of the law. Consequently, we reverse appellant's conviction for false identification to a

law enforcement authority and vacate the corresponding sentence. Our decision does not appear to upset the trial court's sentencing scheme on the remaining conviction of driving while operating privileges suspended or revoked. Therefore, we decline to remand for resentencing.

Judgment of sentence affirmed in part and reversed in part. Jurisdiction relinquished.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 9/6/2019